**COYLE LAW GROUP LLP**
55 Madison Avenue, Suite 400
Morristown, NJ 07960
(973) 801-0454
jcoyle@coylelawgroup.com
John D. Coyle 029632001
Jesse C. Ehnert 038262007
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| KATHERINE A. MARASCO,<br><br>                    Plaintiff,<br><br>v.<br><br>SHIONOGI INC.,<br><br>                    Defendant. | Civil Action No.: 2:22-cv-4671<br><br>**CIVIL ACTION**<br><br>**COMPLAINT WITH JURY DEMAND** |

1.      This action seeks redress for the willful, wanton, and intentional violation of the civil rights of an employee who was dedicated to the success of Shionogi Inc. ("Shionogi" or "Defendant").

2.      As a Key Account Manager for Defendant, Plaintiff Katherine A. Marasco built critical connections between the company, physicians, and institutions to ensure their pharmaceutical products were safely and successfully changing people's lives.

3.      Despite her loyalty, the administration and attorneys for Shionogi turned their back on Ms. Marasco .

4.      Defendant imposed a condition of employment that required Ms. Marasco to forego a sincerely held religious belief in violation of the NJLAD and TITLE VII. Specifically, when Ms. Marasco submitted requests for exemption from the mandatory COVID-19 policy, Shionogi refused to respect her beliefs and fired Ms. Marasco after hiring her less than a year prior.

5.      This action is the result of individual actors manipulating the articulation of personnel's religious beliefs to justify discrimination and economic coercion against her. It seeks injunctive relief for Ms. Marasco and all others similarly situated under Title VII of the Civil Rights Act, 42 U.S.C. §2000e-2, *et seq*. ("TITLE VII") and the New Jersey Law Against Discrimination ("LAD")

6.      Further, as discussed in greater detail below, TITLE VII and the LAD required Defendant to engage in a *bona fide* interactive process to determine if Ms. Marasco could perform the essential functions of her job with an accommodation.

7.      Shionogi refused to conduct this good faith investigation in flagrant disregard for TITLE VII.

8.      Shionogi has taken the following illegal and flagrantly discriminatory positions:

      a.  First, it stated outright it could not accommodate Ms. Marasco;

      b.  Second, it refused to engage in an interactive process with Ms. Marasco to determine if there was an accommodation acceptable to both parties

9.      Shionogi's discriminatory pretext practice was that it could not accommodate Ms. Marasco if she were not vaccinated is contradicted by Shionogi's own internal rules.

10.     For example, shortly before firing Ms. Marasco for seeking to protect her religious beliefs in accordance with TITLE VII and the LAD, Shionogi held a national sales meeting. Attendees at the meeting who were not vaccinated were permitted to attend if they tested negative for COVID-19 prior to attending.

11.     Shionogi's discriminatory pretext practices also were based on the false premise that Ms. Marasco would be unable to enter any medical facilities in New Jersey if she were unvaccinated.

12.     However, tens of thousands of unvaccinated medical personnel in hundreds of facilities across New Jersey have been safely performing the essential functions of their job without being

vaccinated with the accommodations of masking and routine testing—which is the exact same accommodation required by New Jersey Governor Murphy in his Executive Order 283:

> The policies adopted by covered settings pursuant to this Order must provide appropriate accommodations, to the extent required by federal and/or state law, for employees who request and receive an exemption from vaccination because of a disability, medical condition, or sincerely held religious belief, practice, or observance. The policies adopted by covered settings pursuant to this Order must require covered workers that receive an exemption pursuant to this paragraph to continue weekly or twice weekly testing as required by Executive Order No. 252 (2021).

13. This Complaint does not seek to challenge the Executive Order, or the fact that New Jersey Governor Murphy instituted a COVID-19 vaccine mandate by Executive Order or that Shionogi is complying with same. Instead, the action arises because Shionogi has elected to violate TITLE VII and the LAD with respect to the enforcement of the vaccine mandate.

14. The COVID pandemic has placed great strains on all of us. Most people across this great nation and state stood together, but not the administration of Shionogi. They instead used COVID as a pretext to violate its most basic legal obligations to Ms. Marasco .

15. This Complaint seeks to hold Shionogi accountable.

**PARTIES AND JURISDICTION**

16. Defendant Shionogi Inc. is a pharmaceutical company based out of Osaka, Japan with its United States address at 300 Campus Drive, Florham Park, New Jersey 07932 in Morris County, New Jersey.

17. Plaintiff Katherine A. Marasco is a resident of Bedminster in Somerset County, New Jersey.

18. On June 14, 2022, the United States Equal Employment Opportunity Commission issued a Notice of Right to Sue in the matter EEOC Charge 17E-2022-00233, *Katherine A. Marasco v. Shionogi Inc.*, a copy of which is attached hereto as Exhibit A.

19. This Complaint is filed within 90 days of the Notice of Right to sue.

20. As set forth herein, this Complaint brings claims under Title VII of the Civil Rights Act.

3

21.    Therefore, pursuant to 28 U.S.C. §1331, this Court has original subject matter jurisdiction over this matter.

22.    This Court has personal jurisdiction over Shionogi inasmuch as it has a principal place of business located within the District of New Jersey.

23.    Ms. Marasco is a resident of Somerset County, and therefore, this matter is properly venued in the District Court seated in Trenton.

**FACTUAL HISTORY**

24.    On May 21, 2021, Ms. Marasco was offered a position as Key Account Manager at Shionogi Inc.

25.    In Shionogi's new hire training documents dated August 8, 2021, Shionogi states:

    a.    "Shionogi does not have a work from home restriction in place at this time"

    b.    "Virtual engagements are expected to be an acceptable communication channel & part of the new normal for the foreseeable future"

    c.    "'in-person' engagements are based on employee decision on best course (in-person or virtual) to interact with customers, subject to the customers' willingness and comfort level"

    d.    "Live, in person calls remain 100% voluntary"

    e.    "Field personnel may decide to decline and/or resume live interactions at any time based on their own comfort level"

26.    In the FAQ portion of the new hire documents, in answer to the question "Am I required to be vaccinated for COVID-19?" Shionogi states:

At this time, Shionogi does not require its field personnel to be vaccinated for COVID-19, but does require field personnel to comply with Institution Policies (described in Question 2) above) [*sic*]. Therefore, if vaccination is required to gain entry, field personnel must either: (i) have received the vaccination and provide whatever documentation is required by Institution Policies; or (ii) continue engaging with that healthcare professional through virtual means. **Please note that regardless of the reason, there will be no adverse impact**

4

**to performance evaluations or incentive compensation for continuing to engage in virtual meetings**. If you have any questions, please contact Human Resources. [Emphasis added]

27.    On September 16, 2021, Shionogi's President and CEO Akira Kato, PhD, issued a company-wide communication informing them of Shionogi's new COVID-19 policy, specifically that employees must receive the vaccine or submit an exemption by October 1, 2021.

28.    On September 30, 2021, Ms. Marasco submitted her religious exemption documentation for the COVID-19 vaccine to Human Resources.

29.    In October 2021, Shionogi held its annual National Sales Meeting in-person at the Westin Hotel in Tempe, Arizona. Vaccination against COVID-19 was **not** required for attendance, nor was mask-wearing compulsory at the conference itself. In an email dated October 21, 2021, with the subject line "MUST READ - Know Before You Go - Fetroja National Sales Meeting," Defendant says that unvaccinated attendees must submit a negative PCR test result to Human Resources.

30.    Defendant actively encouraged employees - regardless of vaccination status - to travel across the country, gather indoors, and to follow the loosest of COVID-19 precautions while there.

31.    Ms. Marasco submitted the results of a negative PCR test results in the specified timeframe prior to the meeting to HR and was cleared via email to attend the National Sales Meeting by Angie Acuna, Manager of Human Resources.

32.    Ms. Marasco subsequently became sick with a stomach flu, informed Ms Acuna and her manager, Zack Russo, via email the morning of her flight to travel to the meeting.

33.    Ms. Acuna instructed Ms. Marasco to remain home.

34.    When Ms. Marasco requested to reschedule her flight to come to the meeting later in the week, Ms. Acuna instructed Ms. Marasco to remain home for the week and attend all the General Sessions of the meeting virtually by video. The links were provided to Ms. Marasco and other Key Account Managers not physically present in the meeting rooms to attend virtually.

35.    Ms. Marasco attended all General Sessions of the meeting virtually. During the meeting,

there were multiple Key Account Managers physically present who had to quarantine in their hotel rooms once exhibiting symptoms of illness after arriving at the hotel meeting location.

36.    There was another Key Account Manager who was not permitted to attend the meeting in-person, as this individual had been exposed to a family member had tested positive for COVID-19 with via PCR the weekend before the National Sales Meeting.

37.    On November 17, 2021, Cristine Caterina, Director of Human Resources at Shionogi, sent the following letter to Ms. Marasco :

> This letter is in response to your request for an accommodation from the requirement that you receive a full course of the COVID-19 vaccine under Shionogi Inc.'s Mandatory COVID-19 Vaccination Policy based on your sincerely held religious belief. The religious accommodation form and any supplemental information that you provided to us on September 30, 2021 has been evaluated. Although we are not satisfied that you have provided sufficient information to support a sincerely held religious belief that would qualify for an accommodation request, we do not plan to question you further on this, and will assume for purposes of this letter that your request falls within the boundaries of a sincerely held religious belief.
>
> It is our position as a company that full vaccination against COVID-19 is the best way to help safeguard the health of our employees and their families; our customers and visitors; and the community at large.
>
> The essential functions of your position as a Key Account Manager require you to effectively and consistently call on and educate physicians and other stakeholders within targeted institutions on the use of Shionogi's anti-infective product(s) through in-person one-on-one meetings and presentations, professional education programs and other appropriate means. You are also required to attend all company-sponsored meetings in-person as directed by company management (POAs, National Meetings, National/Regional Conventions, etc.). Maintaining continuity of the essential job functions of your role in the safest way possible is vital. Therefore, after a careful review of your request, as well as a review of your role which requires regular in-person interactions on behalf of Shionogi Inc. with employees, customers and others, we have determined that your continuing to have these in-person interactions while unvaccinated would create a direct threat to the safety of our employees and to others. As a result, we are unable to provide you with a reasonable accommodation as Shionogi Inc. would suffer undue hardship if your request was granted.
>
> Because an accommodation is not available that would not cause undue hardship, we must deny your request. As a result, we ask that you notify Shionogi Inc. whether your decision to become fully vaccinated has changed. If your decision is to become fully vaccinated as required by the Shionogi Inc.'s Mandatory COVID-19 Vaccination Policy, you must inform

your HR Business Partner, by November 24, 2021, of your intent to receive vaccination. If you wish to receive the vaccine, you will have until December 10, 2021 to get the first round of vaccination (if you are getting a two dose regimen) and then 30 days from the first dose to receive the second dose to complete the regimen. If you are getting the J&J single dose vaccination, the deadline to receive the vaccination is December 10, 2021. If your decision is not to become fully vaccinated, we regret to inform you that your last day of employment Shionogi Inc. is scheduled for Friday, December 17, 2021.

Your records related to this accommodation request will be maintained in accordance with applicable confidentiality requirements.

38.     The crux of Defendant's decision to deny Ms. Marasco her religious exemption is that it is somehow impossible for Ms. Marasco to fulfill her duties without vaccination, including holding in-person client meetings, attending Shionogi's National Meetings, and visiting the office. However, none of this is actually true per Defendant's own policies. As noted in Defendant's new hire documents, client meetings can be held virtually depending on the comfort level of the Key Account Manager; as noted in the National Sales Meeting prep email, vaccination and even *masking* are not required for attendance; and, again per the new hire documents, working from home was a perfectly acceptable option.

39.     Additionally, Defendant doubts the validity of Ms. Marasco 's sincere religious beliefs. They do not offer an explanation for why (likely because they do not have one), and ultimately that statement is baseless, unnecessary, and in clear violation of controlling law.

40.     John D. Coyle, attorney for Ms. Marasco , sent a letter to Shionogi on November 22, 2021, appealing the denial.

41.     On December 10, 2021, Ms. Marasco received a letter from Defendant informing her of her termination, effective immediately. The letter gave the following reasons for her termination:

   a.   Defendant still doubts the sincerity of Ms. Marasco 's beliefs (again, without explaining why);

   b.   Defendant would like to shift back to in-person work and requires employees be vaccinated before coming into the office;

7

c.  Defendant believes that Ms. Marasco cannot effectively hold meetings with clients virtually;

d.  Defendant will require Ms. Marasco attend in-person meetings and trainings, such as the National Sales Meeting;

e.  Defendant believes testing is inadequate in combating COVID-19 in the workplace and that contact tracing would be "a burden on Shionogi to manage";

f.  Defendant believes that Ms. Marasco's decision to not be vaccinated for religious reasons while marketing Shionogi's products to clients will cause "reputational damage" to the company;

g.  Defendant believes that Ms. Marasco cannot effectively perform her duties while working from home.

42.  Defendant Shionogi failed to comply with the required interactive practice under TITLE VII and the LAD:

a.  Ms. Marasco is and has always been willing to take precautions before engaging in-person work, such as wearing PPE, testing frequently, and social distancing. Ms. Marasco will hardly be the only employee requiring an exemption and if other employees can work this way with their exemptions, there is no reason to believe Ms. Marasco cannot as well;

b.  Ms. Marasco had been effectively doing her job up to this point, including holding client meetings, and there is no reason to believe she cannot continue to do so even as Shionogi shifts back to in-person work;

c.  Not merely "effectively doing her job," Ms. Marasco was one of Defendant Shionogi's highest performing sales representatives in 2021. Thus, while Defendant Shionogi simultaneously argued that she could not perform her job, during the height of the pandemic, Ms. Marasco excelled far above nearly all of her peers.

8

d. Defendant Shionogi claimed that, since they could not yet require vaccination at the National Sales Meeting since it was before the vaccination deadline, they "used cumbersome and burdensome mandatory protocols leading up to the meeting." Their idea of "cumbersome and burdensome" protocols was one PCR test prior to the meeting and *maybe* masking at the meeting if the employee felt like it. This is hardly burdensome. There is no reason to believe that Ms. Marasco cannot safely attend meetings and trainings while following a *truly* strict COVID-19 regimen, as she has been willing to do;

e. Ms. Marasco even conducted an in-person Speaker Dinner Program on Wednesday, December 1, 2021, at a restaurant in Cape May, NJ with many approved HCPs in attendance and had to work with a last-minute adjustment to live stream via video the Shionogi paid HCP Speaker who was sick at home and could not attend the dinner in-person to give his Shionogi paid and sponsored presentation. This same HCP Speaker had shared in-person at another Speaker Dinner Program in Atlantic City, NJ on Wednesday, September 15, 2021, with Ms. Marasco, one of her colleagues and their manager that he had already taken to-date three Moderna COVID-19 vaccines. Masks and testing were not required by Shionogi for any employees or HCPs to attend these Speaker Dinner Programs.

f. Testing is a very effective means for combating the spread of COVID-19 in the workplace, regardless of what Shionogi believes. Defendant's claim that contact tracing would be "a burden" is purely out of laziness: Shionogi is a large, multinational company and undoubtedly has the capacity for contact tracing. They simply do not want to, at the expense of employees like Ms. Marasco who require legitimate accommodations (not to mention vaccinated employees may still get COVID-19 and contact tracing is simply a sensible way to maintain employee health

and wellbeing);

g. Ms. Marasco 's decision to remain unvaccinated due to her own deeply held religious beliefs does not mean she believes it is ineffective or that Shionogi's products are ineffective, it simply means it is counter to her religious beliefs to *take* them. A moment of critical thinking shows that Shionogi would not suffer any reputational damage from Ms. Marasco's decision to not be vaccinated;

h. As previously noted, Ms. Marasco has been successfully fulfilling her duties since her hiring. In fact, if Shionogi truly believed she could fulfill her duties while working from home, they would not have hired her in the middle of the pandemic before returning to in-person work was a possibility;

43. These letters are not enough to be considered an "interactive" process, in which Defendant Shionogi is obligated to provide a reasonable accommodation if one could be granted without causing an undue hardship to Shionogi or pose a direct threat to the health and safety of others.

44. After terminating Ms. Marasco, Defendant Shionogi then doubled down on its intentional harm by knowingly misrepresenting to the New Jersey Department of Labor, Unemployment that Ms. Marasco had voluntarily left her employment, despite knowingly firing her.

45. Refusing to engage in an interactive process and repeatedly, baselessly doubting Ms. Marasco 's sincerity forces one to question if Shionogi's actions were in good faith and truly rooted in concern for others, or if it was a thinly veiled vendetta against a loyal staff member who gave them no legitimate grounds for removal.

46. Ironically, since being illegally terminated in retaliation for seeking a religious exemption from Shionogi, Ms. Marasco has sought other employment within the pharmaceutical field.

47. For the two positions she was offered—one of which she accepted, Ms. Marasco also submitted requests for religious exemption—which were granted.

48. Both companies, including Ms. Marasco's current employer—are the creators and

manufacturers of the COVID-19 vaccines available in this country!

49. That means that the COVID-19 vaccine manufacturers themselves recognized Ms. Marasco's religious beliefs, accepted them, and were able to accommodate her.

50. In contrast, Shionogi rejected Ms. Marasco's assertion of her religious beliefs, then failed to accommodate her by falsely stating that she could not work without being vaccinated, then retaliated by firing her and falsely stating to Unemployment that Ms. Marasco voluntarily quit.

<u>**COUNT I:**</u>

<u>**RELIGIOUS DISCRIMINATION TITLE VII**</u>

51. Ms. Marasco repeats and realleges the allegations contained in the prior sections as if fully set forth herein.

52. TITLE VII prescribed requirements that Shionogi was required to follow upon receipt of a request for religious exemption from the COVID-19 vaccination policy.

53. TITLE VII prohibits an employer, such as Shionogi, from retaliating against an employee who asserts their protected rights under TITLE VII.

54. TITLE VII protects the rights of persons with sincerely held religious beliefs.

55. TITLE VII prohibits Shionogi from retaliating against an employee who seeks a religious exemption from the COVID-19 vaccination policy.

56. Upon receipt of the requests for religious exemption from Ms. Marasco, Shionogi terminated Ms. Marasco as an employee.

57. By terminating Ms. Marasco's employment, Shionogi retaliated against them in violation of the TITLE VII.

58. As a result, Ms. Marasco was damaged.

**WHEREFORE:** Ms. Marasco demands entry of a judgment awarding:

    a) Compensatory damages;

11

b) Punitive damages;

c) Attorneys' fees and costs of suit; and

d) Such other relief as the Court may deem proper and just.

## COUNT II:

### VIOLATION OF TITLE VII: FAILURE TO ACCOMMODATE

59. Ms. Marasco repeats and realleges the allegations contained in the prior sections as if fully set forth herein.

60. TITLE VII provides that Shionogi <u>must</u> provide an employee with a reasonable accommodation from their mandatory vaccine policy that would enable them to do their job, unless doing so would impose an undue burden on their operations.

61. TITLE VII requires Shionogi to make a *bona fide* effort to reach an accommodation for employees who seek exemption.

62. Shionogi did not make a *bona fide* effort to reach an accommodation for Ms. Marasco .

63. TITLE VII provides that an accommodation will be considered to constitute an undue hardship if it would result in the inability of an employee to perform the essential functions of their position.

64. TITLE VII provides that reasonable accommodations for exemptions from the COVID-19 vaccine could include requiring the employee to undergo regular testing for COVID-19, or otherwise allowing you to work in a manner that would reduce or eliminate the risk of harm to other employees or to the public. A reasonable accommodation may also include providing you with personal protective equipment that sufficiently mitigates your risk of COVID-19 transmission and exposure.

65. Ms. Marasco was able to perform the essential functions of their job without an undue hardship to Shionogi.

12

66.     Ms. Marasco was able to perform the essential functions of her job without putting the public at risk.

67.     By refusing to provide accommodations, Shionogi violated TITLE VII.

68.     As a result, Ms. Marasco was damaged.

**WHEREFORE:** Ms. Marasco demands entry of a judgment awarding:

a)   Compensatory damages;

b)   Punitive damages;

c)   Attorneys' fees and costs of suit; and

d)   Such other relief as the Court may deem proper and just.

## COUNT III:

### RELIGIOUS DISCRIMINATION LAD

69.     Ms. Marasco repeats and realleges the allegations contained in the prior sections as if fully set forth herein.

70.     LAD prescribed requirements that Shionogi was required to follow upon receipt of a request for religious exemption from the COVID-19 vaccination policy.

71.     LAD prohibits an employer, such as Shionogi, from retaliating against an employee who asserts their protected rights under LAD.

72.     LAD protects the rights of persons with sincerely held religious beliefs.

73.     LAD prohibits Shionogi from retaliating against an employee who seeks a religious exemption from the COVID-19 vaccination policy.

74.     Upon receipt of the requests for religious exemption from Ms. Marasco , Shionogi terminated Ms. Marasco as an employee.

75.     By terminating Ms. Marasco's employment, Shionogi retaliated against them in violation of the LAD.

13

76.     As a result, Ms. Marasco was damaged.

**WHEREFORE:** Ms. Marasco demands entry of a judgment awarding:

    e)  Compensatory damages;

    f)  Punitive damages;

    g)  Attorneys' fees and costs of suit; and

    h)  Such other relief as the Court may deem proper and just.

**COUNT IV:**

**VIOLATION OF LAD: FAILURE TO ACCOMMODATE**

77.     Ms. Marasco repeats and realleges the allegations contained in the prior sections as if fully set forth herein.

78.     LAD provides that Shionogi <u>must</u> provide an employee with a reasonable accommodation from their mandatory vaccine policy that would enable them to do their job, unless doing so would impose an undue burden on their operations.

79.     LAD requires Shionogi to make a *bona fide* effort to reach an accommodation for employees who seek exemption.

80.     Shionogi did not make a *bona fide* effort to reach an accommodation for Ms. Marasco .

81.     LAD provides that an accommodation will be considered to constitute an undue hardship if it would result in the inability of an employee to perform the essential functions of their position.

82.     LAD provides that reasonable accommodations for exemptions from the COVID-19 vaccine could include requiring the employee to undergo regular testing for COVID-19, or otherwise allowing you to work in a manner that would reduce or eliminate the risk of harm to other employees or to the public. A reasonable accommodation may also include providing you with personal protective equipment that sufficiently mitigates your risk of COVID-19 transmission and exposure.

83.    Ms. Marasco was able to perform the essential functions of her job without an undue hardship to Shionogi.

84.    Ms. Marasco was able to perform the essential functions of her job without putting the public at risk.

85.    By refusing to provide accommodations, Shionogi violated LAD.

86.    As a result, Ms. Marasco was damaged.

**WHEREFORE:** Ms. Marasco demands entry of a judgment awarding:

  e)   Compensatory damages;

  f)   Punitive damages;

  g)   Attorneys' fees and costs of suit; and

  h)   Such other relief as the Court may deem proper and just.

**COUNT V:**

**RETALIATION IN VIOLATION OF LAD AND TITLE VII**

87.    Ms. Marasco repeats and realleges the allegations contained in the prior sections as if fully set forth herein

88.    The LAD and TITLE VII prohibit Shionogi from retaliating against Ms. Marasco for her assertion of a religious exemption from the COVID-19 vaccination policy.

89.    As set forth above, Shionogi illegally retaliated against Ms. Marasco by terminating her employment.

90.    Further, Shionogi illegally retaliated against Ms. Marasco by falsely stating to the NJ Division of Unemployment that Ms. Marasco had voluntarily left employment with Shionogi.

91.    As a result, Ms. Marasco was damaged.

**WHEREFORE:** Ms. Marasco demand entry of a judgment awarding:

  a.   Compensatory damages;

15

b.  Punitive damages;

c.  Attorneys' fees and costs of suit; and

d.  Such other relief as the Court may deem proper and just.

## COUNT VI:

## DECLARATORY JUDGMENT

92.  Ms. Marasco repeats and realleges the allegations contained in the prior sections as if fully set forth herein.

93.  LAD and TITLE VII provided for injunctive relief to prevent future violations.

94.  Ms. Marasco is legally entitled to a declaratory judgment that Shionogi violated the LAD and TITLE VII and that an injunction should be issued requiring Shionogi to comply with the LAD and TITLE VII regarding religious exemptions and accommodations.

**WHEREFORE:** Ms. Marasco demand entry of a judgment awarding:

a.  Injunctive relief as set forth herein;

b.  Attorneys' fees and costs of suit; and

c.  Such other relief as the Court may deem proper and just.

## JURY DEMAND

Ms. Marasco hereby demands a trial by jury of all issues so triable.

**Dated: July 21, 2022**                          **Attorneys for Ms. Marasco**

By:    *s/ John D. Coyle*

**COYLE LAW GROUP LLP**
John D. Coyle, Esq. (0296362001)
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel. (973) 370-0592
jcoyle@coylelawgroup.com

16

# EXHIBIT A

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Katherine Marasco**<br>**83 Mayfield Road**<br>**Bedminster, NJ 07921** | From: **Philadelphia District Office**<br>**801 Market St, Suite 1000**<br>**Philadelphia, PA 19107**<br>**(267) 589-9700** |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17E-2022-00233** | **Damon Johnson,**<br>**State, Local and Tribal Program Manager** | **(267) 589-9722** |

*(See also the additional information enclosed with this for*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimina Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. I been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 D of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim u state law may be different.)

Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be comple within 180 days from the filing date.

The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be bro in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay du any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.***

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Karen McDonough
06/14/2022

Enclosures(s)

**Karen McDonough**
**Enforcement Manager**

cc:   Kristine J Feher
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932

John Coyle
Coyle Law Group
55 Madison Avenue, Suite 400
Morristown, NJ 07960